# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**HOLLY SMITH**,

        Plaintiff,

v.

**CHOICE LABS, LLC**,

        Defendant.

Case No.
Hon.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

Plaintiff Holly Smith, by and through her attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, *et seq.*

2. Plaintiff, Holly Smith, is an individual residing in the City of Jackson, Michigan in Jackson County.

3. Defendant, Choice Labs, LLC, is a domestic limited liability company with a registered business address in Okemos, Michigan.

4. At all times relevant hereto, Plaintiff performed work for Defendant at its location in Jackson, Michigan in the Eastern District of Michigan.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

6. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

7. Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Defendant employed Plaintiff within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

8. Defendant is an employer and Plaintiff is an employee within the meaning of the ADA and the PWDCRA.

9. Plaintiff filed a timely charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her disability and retaliation.

10. Plaintiff's charge was within 300 days of the commission of the unlawful employment practices alleged in this claim.

11. Plaintiff received her notice of right to sue, and she has filed this complaint within ninety (90) days of receiving her notice of rights.

## STATEMENT OF FACTS

12. Plaintiff began working for Defendant in or about January 2020 as a Production Associate.

13. At all time relevant hereto, Plaintiff performed her job diligently and competently and was well-qualified for the positions she held.

14. Plaintiff had no disciplinary issues with her employment until she disclosed in or about late July 2020 that she suffered from a cancerous tumor (melanoma) that needed to be removed.

15. The melanoma caused disruption to Plaintiff's major life activities, including her ability to work. If untreated, the cancerous tumor could spread, potentially leading to death.

16. As a result of her disability, Plaintiff requested medical leave to have the melanoma surgically removed.

17. Initially, this did not appear to be a problem, and Defendant granted the leave.

18. Plaintiff's doctor required her to isolate prior to surgery, due to the COVID-19 pandemic, beginning on July 31, 2020.

19. On August 4th, Plaintiff was tested for COVID and then had the surgery on August 7th.

20. In the lead up to her surgery, Defendant's management texted Plaintiff throughout the week and told her that she needed to make sure she and her wife (who also worked for Choice Labs) returned with notes from her doctor.

21. During that time, Plaintiff responded with information about the Family and Medical Leave Act ("FMLA") and Defendant's sick leave policies for her and her wife.

22. The day after Plaintiff sent that information, she learned that Defendant's management had told employees not to communicate with Plaintiff or her wife.

23. The day of Plaintiff's surgery, Defendant contacted Plaintiff's wife to tell her that she would need to quarantine for 14 days after the surgery despite the surgeon stating that she was not at increased risk for COVID exposure.

24. On the drive back from the hospital after her surgery, on August 7, 2021, Plaintiff noticed a shift leader was being rude to another employee in a text group chat.

25. Groggily (due to the surgery), Plaintiff responded that the shift leader could not stifle someone for expressing their feelings or opinion.

26. The shift leader then repeatedly called Plaintiff to the point that she had to block him.

27. On August 9, 2020, while Plaintiff was still recovering from the surgery, the shift leader texted Plaintiff's wife to tell her that Plaintiff was fired for insubordination.

28. Defendant terminated Plaintiff because of her disability and in retaliation for her request for a reasonable accommodation (medical leave) and for expressing her concerns about Defendant following laws related to disability and medical leave.

29. After her termination, Plaintiff learned that Defendant claims she struggled to follow instructions directed by a new leader, making training difficult for the new lead. It also claims that Defendant had several instance of negative comments and attitude problems.

30. Defendant's claims, however, are mere pretext for disability discrimination and retaliation.

31. Plaintiff had not been at work for over a week before her termination. If Plaintiff had been insubordinate at work to warrant termination, she would have been terminated before taking leave.

32. Moreover, Plaintiff's supervisor (listed on the termination paperwork) was not advised of Plaintiff's termination and believed that Plaintiff would be able to return to work after her recovery.

33. On information and belief, Defendant did not terminate other similarly-situated, non-disabled employees who engaged in conduct similar to the conduct Defendant claims warranted Plaintiff's termination.

34. On information and belief, Defendant replaced Plaintiff with a non-disabled employee.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

35. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

36. Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit:

   a. a physical impairment, which substantially limits one or more of her major life activities, including, but not limited to, her ability to work and engage in the daily activities of life; and/or

   b. a record of such physical impairment.

37. Plaintiff is a qualified individual with a disability as defined by the ADA, to-wit: Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of her employment duties with Defendant.

38. Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

39. Plaintiff was entitled to and requested a reasonable accommodation (i.e. medical leave), which Defendant denied by terminating Plaintiff instead of allowing her to return to work.

40. Plaintiff was well-qualified and able to perform the essential functions of her duties with or without the requested accommodation, but Defendant instead terminated Plaintiff's employment.

41. Defendant discriminated against Plaintiff on account of her real and perceived disabilities in violation of the ADA, 42 U.S.C. § 12112, by and through its agents, servants, and/or employees, by acts including, but not limited to terminating Plaintiff's employment and denying her a reasonable accommodation.

42. Defendant's actions in violation of the ADA were willful.

43. Plaintiff's disabilities were the motivating and/or but for cause of Defendant's actions in violation of the ADA.

44. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

45. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE PWDCRA

46. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

47. At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

48. Plaintiff has a disability as defined by the PWDCRA, to-wit:

   a. a determinable physical characteristic which may result from disease, injury, congenital condition of birth, or functional disorder, to wit: melanoma;

   b. which substantially limits one or more of her major life activities, including, but not limited to: her ability to work and engage in the daily activities of life;

   c. which is unrelated to Plaintiff's ability to perform the duties of her job or position, to-wit: with or without an accommodation, Plaintiff's disability does not prevent her from performing the duties of her job or position; and/or

   d. a record of such determinable physical characteristic.

49. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

50. Defendant discriminated against Plaintiff on account of her real and perceived disability in violation of PWDCRA, MCL § 37.1102(1), by acts including, but not limited to: failing to provide Plaintiff with reasonable accommodation for her disability and/or terminating Plaintiff.

51. Defendant's actions in violation of the PWDCRA were willful.

52. Plaintiff's disabilities were the motivating and/or but for cause of Defendant's actions in violation of the PWDCRA.

53. As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

54. As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## <u>RETALIATION IN VIOLATION OF THE ADA</u>

55. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

56. At all relevant times, Defendant was a covered entity under the ADA as defined by 42 U.S.C. 12111(2), and Plaintiff was an employee covered by and within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12111(4).

57. Plaintiff engaged in federally protected activity by requesting reasonable accommodations for her disability and by expressing her concerns about Defendant following laws related to disability and medical leave.

58. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, refusing her return to work from medical leave and terminating Plaintiff.

59. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

60. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

61. Defendant's actions in violation of the ADA were willful.

62. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

63. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

64. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## RETALIATION IN VIOLATION OF THE PWDCRA

65. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

66. As stated above, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

67. Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act.

68. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

69. Defendant retaliated against Plaintiff for her request for a reasonable accommodation and for expressing her concerns about Defendant following laws related to disability and medical leave in violation of the PWDCRA, MCL § 37.1602, by and through its agents, servants, and/or employees, by acts including, but not limited to denying Plaintiff reinstatement from medical leave and terminating Plaintiff's employment.

70. Defendant's actions in violation of the PWDCRA were willful.

71. Plaintiff's request for a reasonable accommodation and her expression of her concerns about Defendant following laws related to disability and medical leave was the motivating and/or but for cause of Defendant's actions in violation of the PWDCRA.

72. As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

73. As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, **HOLLY SMITH**, requests that this Court enter the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of the ADA and the PWDCRA;

b. Compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Exemplary damages in whatever amount she is found to be entitled;

d. Punitive damages in whatever amount she is found to be entitled;

e. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

f. An order of this Court reinstating Plaintiff to the position she would have if there had been no wrongdoing by Defendant;

g. An injunction of this Court prohibiting any further acts of discrimination by Defendant;

h. An award of interest, costs and reasonable attorney fees; and

i. Whatever other equitable relief this Court finds appropriate.

        Respectfully Submitted,
        CROSON, TAUB, & MICHAELS, PLLC

        /s/ Adam M. Taub
        Adam M. Taub (P78334)
        Attorney for Plaintiff
        455 E. Eisenhower Pkwy, Suite 75
        Ann Arbor, MI 48108
        (734) 519-0872
        ataub@ctmlawyers.com

Dated: December 1, 2021

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**HOLLY SMITH**,                                              Case No.
                                                             Hon.
        Plaintiff,

v.

**CHOICE LABS, LLC**,

        Defendant.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

    **NOW COMES** Plaintiff, **HOLLY SMITH**, by and through her attorneys, **CROSON, TAUB, & MICHAELS, PLLC**, and hereby demands a trial by jury, for all issues so triable.

                                            Respectfully Submitted,
                                            CROSON, TAUB, & MICHAELS, PLLC


                                            /s/ Adam M. Taub_____
                                            Adam M. Taub (P78334)
                                            Attorney for Plaintiff
                                            455 E. Eisenhower Pkwy, Suite 75
                                            Ann Arbor, MI 48108
                                            (734) 519-0872
                                            ataub@ctmlawyers.com

Dated: December 1, 2021